## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| William O. Evans, Jr *as Trustee for the Heirs and Next-of-Kin for Benjamin Evans*, | Case No. 20-cv-2474 (MJD/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Brian Jeffery Krook, et al., | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion for Order to Show Cause, Motion to Compel, and to Seek Sanctions (Dkt. 85) ("Defendants' Sanctions Motion"), Plaintiff's Motion to Compel and to Seek Sanctions ("Plaintiff's Sanctions Motion") (Dkt. 136), and the parties' Joint Motions for Continued Sealing (Dkts. 70, 118, 170, 171, and 175).[1] For the reasons stated below, Defendants' Sanctions Motion is granted in part, Plaintiff's Sanctions Motion is granted in part, and the Joint Motions for Continued Sealing are granted.

## I.    BACKGROUND

### A.    Factual and Procedural Background

Plaintiff William O. Evans, Jr. ("Plaintiff"), as trustee for the heirs and next-of-kin of decedent Benjamin Evans, initiated this action on December 4, 2020 by filing federal

---

[1]    All page number citations are to the CM/ECF pagination unless otherwise noted.

and Minnesota state law claims against Defendants Brian Krook, Michelle Folendorf, Joshua Ramirez, Michael Ramos, and Dan Starry, in their individual and official capacities, and against Washington County (the "County").  (*See* Dkt. 1.)  Plaintiff alleges Defendants "used deadly force causing the wrongful death of Benjamin Evans and failed to accommodate his mental health disability, thereby depriving [Benjamin] Evans of rights secured by the United States Constitution" when law enforcement shot Benjamin Evans ("the decedent"), resulting in his death in April 2018.  (*See id.* ¶¶ 2, 17-34.)  Defendants have filed an answer to the Complaint.  (Dkt. 9.)

On March 30, 2021, the Court issued a Pretrial Scheduling Order which set various deadlines in this case.  (Dkt. 13.)  On October 29, 2021, Defendants filed a Motion to Compel, Extend Pretrial Scheduling Order and Seek Sanctions ("Motion to Compel") and supporting documents, which Plaintiff opposed.  (Dkts. 19, 22-61, 62-63, 67-68.)  Specifically, Defendants asked the Court to order Plaintiff to:

1.  Supplement Rule 26 Disclosures;

2.  Supplement Answers to Interrogatory Nos. 6, 7, 8, 9, 11, 12, 13, 14, 16, 17, 18, 20, and 21;

3.  Supplement Answers to Request for Production of Documents ("RFP") Nos. 2, 3, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, 23, 25, 26, and 27; and

4.  Provide mental health authorizations executed by Tyler Evans and William Evans (Plaintiff).

(Dkt. 19 at 1.)  Defendants also sought an extension of all deadlines in the Pretrial Scheduling Order, as well as attorneys' fees and costs associated with bringing the Motion to Compel.  (*Id.* at 1-2.)

On November 29, 2021, Defendants filed an amended meet-and-confer statement

to the Motion to Compel, wherein they stated that the parties conferred regarding several

outstanding discovery issues and that the parties agreed that:

> Based on Plaintiff's representation that the next-of-kin are not seeking and
> will not testify regarding claimed emotional distress, Defendants withdraw
> the request for medical authorizations and demand for supplementation of
> Interrogatory No. 19.
>
> Based on Plaintiff's supplementation, Defendants withdraw the Motion in
> regard to Interrogatories Nos. 11, 12, 16, and 20. Defendants also withdraw
> the Motion with regard to Responses to Requests for Production of
> Documents Nos. 13 and 18.
>
> Defendants also agreed to withdraw the Motion for Sanctions.
>
> Finally, Plaintiff agreed to supplement and/or amend various aspects of his
> discovery, which have the potential to resolve discovery disputes related to
> Interrogatories Nos. 8, 13, 14, and 18. However, to date, Defendants have yet
> to receive this supplementation.
>
> All other aspects of the Motion remain in dispute.

(Dkt. 71 at 1-2.)

On December 2, 2021, the Court held a hearing on the Motion to Compel and

granted the motion in part, denied it in part, and denied it in part as moot ("December 2

Hearing"). (Dkt. 76.) At the hearing, Defendants represented that they had received

supplemental answers to Interrogatory Nos. 8, 13, and 18 from Plaintiff, which resolved

the disputes as to those interrogatories. (Dkt. 83 at 5:18-24.)[2] The following discovery

was still at issue: Defendants' Interrogatory Nos. 6, 7, 9, 14, 17, and 21; Defendants' RFP

Nos. 2, 3, 10, 11, 12, 15, 16, 17, 19, 20, 23, 25, 26, and 27; and Plaintiff's Rule 26

---

[2]     Citations to transcripts are given in a transcript page:line number format.

disclosures.  (*Id.* at 6:1-10.)  As further discussed below, the Court ordered Plaintiff to supplement his responses to all discovery requests at issue by January 7, 2022,[3] except for RFP No. 16 ("December 2 Order").  (*Id.* at 12:24-25, 13:1-25, 14:1-25, 15:1-11, 16:18-22, 21:1-18, 31:7-16, 32:18-25, 33:1-8, 35:1-25, 41:10-23, 42:1-17, 54:8-21, 57:23-25, 58:1-18, 60:20-25, 61:1-3, 19-25, 62:1-11; *see also* Dkt. 76.)  The Court denied the Motion to Compel without prejudice as to RFP No. 16 in view of the scope of information sought and concerns about whether it was disproportionate to the needs of the case, but stated that Defendants could renew the motion as to RFP No. 16 after Plaintiff supplemented his discovery responses setting forth the basis of his claim for non-economic damages.  (Dkt. 83 at 49:15-25, 50:1-22.)  Additionally, the Court ordered Plaintiff to specifically identify documents relied on by title[4] in the discovery responses and to clearly state any objections for documents being withheld, if any.  (*Id.* at 27:16-25, 28:1-10, 30:10-23.)

The Court will not recap the entirety of the oral December 2 Order here, but sets forth below the portions of that Order that relate to the discovery requests still at issue in Defendants' Sanctions Motion by reproducing each discovery request and then summarizing the ruling as to that request in the December 2 Order.

---

[3]     At the hearing, the Court inquired as to whether Plaintiff's counsel had any concerns with serving the supplemental discovery responses by January 7, 2022.  (Dkt. 83 at 61:25-62:2.)  Plaintiff's counsel responded: "The timing in terms of being able to provide the supplementation, no, your Honor. . . I can certainly do that."  (*Id.* at 62:3-6.)

[4]     Plaintiff produced the documents without Bates numbers.  (Dkt. 83 at 28:13-16.)

First, Interrogatory No. 17 asks Plaintiff to:

Identify all damages (including special damages), expenses, injuries, or pecuniary loss that you allege have been incurred as a result of the incident and/or that you are requesting as a result of the incident. For each type of damage, expense, injury or pecuniary loss, identify the following:

      a.  The nature of the damage, expense, injury or pecuniary loss;

      b.  The extent of the injury and the amount of damage, expense or pecuniary loss;

      c.  The manner in which you calculated the value of damage, expense, injury and pecuniary loss;

      d.  and Identify all facts, evidence and documents that relates to or supports your claim of injury, damage, expense or pecuniary loss.

(Dkt. 26 at 9.)

The Court ordered Plaintiff to supplement his answer to Defendants' Interrogatory No. 17 "to provide the computation for the categories of damages in response to the interrogatory [request] and in [his] supplemental initial disclosures," clearly state whether he is unable to provide the basis for any particular damages category, and identify the documents used in calculating damages, including "checks," "receipts," and all other documents relied on. (Dkt. 83 at 13:3-17, 14:1-15, 15:6-11.)

Next, RFP No. 17 seeks "[a]ll documents received by Plaintiff in any format from any person (not Plaintiffs attorney) that relate to any allegations made by Plaintiff in this matter." (Dkt. 26 at 14.) The Court ordered Plaintiff to supplement his response to RFP No. 17 to indicate whether all responsive documents have been produced and "to the extent [Plaintiff receives] any more documents from third parties, [Plaintiff would] need to produce them if they're responsive and [Plaintiff needs] to make sure that [he has]

produced all the documents [he has] received that are responsive to Request 17 and then do a supplemental response" indicating the same.  (Dkt. 83 at 41:10-23.)

Then, as to RFP No. 23, it seeks "[a]ny and all documents which Plaintiff claims relates in any manner to his claim for damages in this matter."  (Dkt. 26 at 15.)  The Court ordered Plaintiff to supplement his production with regard to this request and to clearly state whether there are any documents being withheld in response to this discovery request.  (Dkt. 83 at 15:16-25, 16:18-22.)

Finally, the Court turns to RFP Nos. and 26.  RFP No. 2 seeks "[a]ny and all documents referring to or relating in any way to any alleged improper conduct on behalf of Defendants."  (Dkt. 26 at 13.)  RFP No. 26 seeks:

> All statements made by parties or nonparties concerning the above action or its subject matter. For the purpose of this request, a statement is (a) a written statement signed or otherwise adopted or approved by the person making it; or (b) a stenographic, mechanical, electrical or other recording, or a transcription thereof, which is substantially a verbatim recital of an oral statement by the person making it and contemporaneously recorded.

(*Id.* at 15.)

As to all of the RFPs at issue, including RFP Nos. 2 and 6, the Court ordered Plaintiff to "supplement [his] responses to the requests for production as well to make it clear that the document production has been updated and if to the extent any documents are being withheld based on objections, [Plaintiff] need[s] to make that clear as well."  (Dkt. 83 at 28:2-10.)  The Court further ordered Plaintiff to supplement his document production in response to these RFPs and his responses to indicate that all responsive documents had been produced.  (*Id.* at 42:12-17.)

**B.     Defendants' Sanctions Motion**

Defendants filed their current Sanctions Motion on January 28, 2022.  (Dkt. 85.)

Defendants asks the Court to order Plaintiff to show cause why he should not be held in

civil contempt and for the Court to impose sanctions due to Plaintiff's failure to comply

with the December 2 Order.  (*Id.* at 1 ¶ 1; *see also* Dkt. 87 at 1, 33-36.)  Defendants

contend that Plaintiff failed to supplement his discovery responses to Defendants'

Interrogatory Nos. 6, 9, and 17 and RFP Nos. 2, 3, 10, 17, 23, and 26 by the January 7,

2022 deadline.  (Dkt. 85 at 1 ¶ 2; *see also* Dkt. 87 at 1.)  As a result, and pursuant to

Federal Rules of Civil Procedure 37(a)(5), 37(b)(2)(A) and 37(b)(2)(C), Defendants seek

attorneys' fees and costs incurred in: (1) securing the December 2 Order; (2) enforcing

the December 2 Order; and (3) bringing the Sanctions Motion.  (Dkt. 87 at 33-36.)

Defendants also seek to foreclose Plaintiff from suggesting a specific amount for

emotional distress damages to the jury if he intends to suggest a specific amount to the

jury for non-economic damages, yet fails to supplement his Rule 26 disclosures to

provide Defendants with a computation of damages.  (*Id.* at 35-36.)

On March 28, 2022, Defendants filed an amended meet-and-confer statement to

their Sanctions Motion, wherein they stated that Plaintiff supplemented his discovery

responses on February 15, 2022, as well as his expert disclosures on February 24, 2022,

identifying Dr. Justin King as an expert and that Plaintiff provided Dr. King's report on

March 22, 2022.  (Dkt. 152 at 1.)  As a result, Defendants withdrew their Sanctions

Motion as to Interrogatory Nos. 6 and 9 and RFP Nos. 3 and 10.  (*Id.* at 2.)  The

remainder of Defendants' Sanctions Motion remained in dispute, including Interrogatory

No. 17 and RFP Nos. 2, 17, 23, 26, the motion to compel Interrogatory No. 16 (which the Court interprets as a motion to compel as to RFP No. 16, as Interrogatory No. 16 was not at issue), and their request for sanctions. (*Id.*)

### C.    Plaintiff's Sanctions Motion and Defendants' Opposition

Plaintiff filed his Sanctions Motion on March 17, 2022, requesting the following:

1.    An order to compel Defendants to supplement their discovery responses to reflect the presence, knowledge, and identities of all the individuals thus far missing from their discovery responses,

2.    An order to compel Defendants to produce documents listed on Defendants' Privilege Log,

3.    In the alternative, for in-camera review of documents listed on Defendants' Privilege Log to ascertain the nature of the withheld documents and the applicability of the claimed privileges, and

4.    For attorney fees incurred in connection with this Motion.

(Dkt. 136.)

Plaintiff claims that on January 27, 2022, Defendants provided a privilege log to Plaintiff describing email exchanges between various individuals from July 12, 2018 to November 7, 2019, and that Defendants had previously failed to disclose those individuals. (Dkt. 120 at 1-2.) Plaintiff asserts that Defendants' privilege log contains very brief descriptions of the contents of each email claiming they are privileged pursuant to the work-product doctrine, attorney-client privilege, and Minnesota Statutes §§ 388.051 and 13.39. (*Id.* at 2.) Plaintiff seeks, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, an order requiring Defendants to supplement their Rule 26 disclosures to include the identities of the authors and recipients of the emails in

Defendants' privilege log.  (*Id.* at 2-4.)  Plaintiff claims that the privilege log alerted him to the presence of eight potential witnesses and identifies these individuals as: (1) Jan Webster (Washington County Human Resources), (2) Molly O'Rourke (Washington County Administrator), (3) Valerie Raiche (Washington County Records Manager), (4) Julie Sorrem (Washington County Risk Manager), (5) Deb McDonald (Washington County Administrator), (6) Robin Shim (Washington County Records), (7) Jenn Heil (Lexipol), and (8) Bjorn Erickson (Washington County Deputy).  (*Id.* at 3-4.)  Plaintiff claims to be prejudiced by Defendants' failure to timely disclose these individuals because it is impossible for Plaintiff to reframe discovery requests at this stage of the case or take additional depositions.  (*Id.* at 4.)  Plaintiff also generally argues that because he has voluntarily withdrawn all Minnesota state law claims in this case, "Defendants cannot rely on Minnesota's law of privilege or the Minnesota Data Practices Act to withhold documents or emails."  (*Id.* at 13.)  Plaintiff seeks attorneys' fees and expenses under Rule 37.  (*Id.* at 13-14.)

Defendants maintain that the emails at issue are protected by the work-product doctrine and attorney-client privilege.  (Dkt. 138 at 12-25.)  Defendants contend that on July 23, 2019, the County was notified of Plaintiff's intent to initiate this litigation via news media coverage and that in response, Defendants retained their counsel of record on that same day to "investigate and provide legal assistance in anticipation of litigation related to the officer involved shooting on April 12, 2018."  (*Id.* at 2.)  Defendants also contend that they produced the County's policies to Plaintiff which they claim are documents that were prepared in the ordinary course of business, but that the emails

accompanying those policies, which Plaintiff now seeks, were created in anticipation of litigation and are privileged materials.  (*Id.* at 24-25, 27-28.)  Defendants argue that Plaintiff's withdrawal of his Minnesota state law claims does not disturb their asserted privilege and that Plaintiff has not met his burden to show that the information in Defendants' privilege log is relevant and within the scope of discovery to justify *in camera* review.  (*Id.* at 26-27.)  Defendants contend that Plaintiff's Sanctions Motion should be denied because it does not comply with this Court's Local Rule 7.1 and that Plaintiff's request for sanctions against Defendants is not warranted.  (*Id.* at 29-35.)

The following are the documents sought by Plaintiff for which Defendants claim attorney-client privilege or work-product protection:

**PRIV001-PRIV002.**  Priv001 and Priv002 are emails dated July 24, 2019 and July 25, 2019 from Attorney Susan Hansen of Madden, Galanter, Hansen LLP (a law firm retained by the County to provide legal services related to labor relations and litigation) to Webster and O'Rourke and between Webster and an assistant County attorney.[5]  (Dkt. 121-10 at 1-2; Dkt. 139-1, Ex. 2 at 1-2.)  Plaintiff argues that attorney-client privilege was waived as to the content of these emails because "the Commissioners talked about their contents to the public."  (Dkt. 120 at 5-6.)  Plaintiff also argues that the work-product doctrine is inapplicable to these emails because they were exchanged in the ordinary course of business as "it is reasonable to assume that it is the regular business

---

[5]     Each "Priv" identifier encompasses multiple emails.  For example, Priv001 constitutes three emails, one sent on July 24, 2019 and two sent on July 25, 2019.  (Dkt. 121-10 at 1-2.)

practice of the Commissioners to consult with their attorney pursuant to their obligations to disclose information to residents of Washington County"; that no attachments were mentioned as to these emails; that this litigation had not commenced in July 2019; that Attorney Hansen does not personally assert that these emails are her work product; and that Defendants do not claim that the emails were created in anticipation of litigation. (*Id.* at 7-8.)

As to Priv001-Priv002, Defendants assert that on July 24, 2019, Attorney Hansen responded via email to Webster and O'Rourke's request for "input for talking points for County Commissioners," which Defendants claim "are not part of any public record of the County Commissioners." (Dkt. 138 at 2-3.) Defendants argue that these emails are protected by the attorney-client privilege as they constitute Attorney Hansen's "advice, strategies, and mental impressions in her professional capacity as an attorney hired by the County," as well as an assistant County attorney's "mental impressions and legal opinions in his professional capacity," and that the emails contain opinion work product of both attorneys. (*Id.* at 15-16.) Defendants assert that the attorney-client privilege was not waived because the County Commissioners did not share the contents of the emails with the public; the emails were not circulated in the ordinary course of business but in anticipation of litigation; and Attorney Hansen would not have offered her opinion on the "talking points" had Plaintiff not indicated his intent to file a civil litigation. (*Id.* at 16-19.) Defendants further argue that Plaintiff has made no argument to show a substantial need for these emails. (*Id.* at 25-26.)

11

**PRIV003-PRIV005, PRIV006-PRIV007, PRIV013-PRIV015, and PRIV016-PRIV018.** Plaintiff asserts that Priv003-Priv005 include six emails that discuss "a search for Benjamin Evans documents requested by legal counsel" exchanged between August 11, 2019 and September 20, 2019 between Kevin Corbid (Washington County Deputy Administrator), Raiche, Sorrem, and Andrew Ellickson (Washington County Sheriff's Office), and which Defendants claim were prepared in anticipation of litigation and are protected by Federal Rule of Evidence 502. (Dkt. 120 at 8.) Plaintiff contends that Defendants' privilege log does not state whether there were any attachments that accompanied these emails, and, citing *MPAY, Inc. v. Erie Custom Computer Applications, Inc.*, Case No. Civ. No. 19-704 (PAM/BRT), 2020 WL 748237, at *2 (D. Minn. Feb. 14, 2020), argues that a disclosure of any such attachments would implicate the privilege or work product protection claimed as to the contents of the emails. (*Id.* at 8-9.)

As to Priv006-Priv007 and Priv013-Priv015, according to Plaintiff, this category includes twelve emails regarding "additional information requested by legal counsel on Evans' claims" sent from September 20, 2019 to November 5, 2019 between Sorrem, Ellickson, "WSCO Records (no name)," Shim, and Legut (a County sergeant). (*Id.* at 9.) Plaintiff argues that these individuals were not communicating directly with legal counsel and that Defendants' privilege log is not detailed enough to show whether the communications were in fact confidential and relating to legal advice. (*Id.*) Plaintiff claims that Defendants are attempting to protect communications with the entire records department of the County as privileged as Defendants' privilege log fails to "identify the

12

individual who received that email" and that while it is reasonable to assume that these emails were accompanied by attachments, it is not clear if they were based on Defendants' privilege log.  (*Id.* at 10.)

Finally, Plaintiff contends that Priv016 to Priv017 are email exchanges between Sorrem and Legut "regarding Sherriff's [sic] Office Policies on 4/12/2018 requested by Legal Counsel on Evans claim," which Defendants assert are privileged because they were prepared in anticipation of litigation.  (Dkt. 120 at 12.)  According to Plaintiff, Priv018 has a similar description in Defendants' privilege log to Priv016-Prov017 and was sent from Erickson to himself (with no other recipient to the email).  (*Id.*)  Plaintiff argues that because the polices transmitted in these emails have been produced to Plaintiff, any claimed privilege has been waived as to the contents of the emails.  (*Id.*)

Defendants claim Priv003-Priv005, Priv006-Priv007, Priv013-Priv015, and Priv017-Priv018 are "internal emails between County employees regarding the search for specific documents that Defendants' counsel requested after being retained in anticipation of litigation on July 23, 2019" and that these emails are opinion work product and are protected nonpublic data under Minn. Stat. § 13.39.  (Dkt. 138 at 20.)  Defendants assert that these emails were generated due to counsel's mental impressions in determining and requesting relevant documents to assess claims and defenses in this action.  (*Id.* at 21.) Defendants argue that even if these documents are determined to constitute ordinary work product, Plaintiff has made no argument to show a substantial need for them.  (*Id.* at 25-26.)

**PRIV008-PRIV012.**  Plaintiff asserts that this category comprises eleven emails between Legut and Heil (a Lexipol representative and third-party vendor to the County) but that Defendants have not clarified what the relationship between the County and Lexipol is for the privilege to attach.  (Dkt. 120 at 10.)  Plaintiff argues that Defendants have not shown why the "Sheriff's Office Policies [dated] 04/12/2018 are privileged" or that they were created in anticipation of litigation and not just in the ordinary course of business.  (*Id.* at 10-12.)

Defendants respond that the County contracted with Lexipol to assist with drafting its policies and provide training materials in 2018 and that in that capacity, Lexipol maintains records of past Washington County Sheriff's Office policies.  (Dkt. 138 at 4; *see also* Dkt. 139 ¶ 7.)  They contend that Priv008 to Priv012 relate to Legut's request to Lexipol for the County's policies in effect on April 12, 2018, which Legut forwarded to Sorrem.  (Dkt. 138 at 22.)  Defendants maintain that these emails were prepared at counsel's specific request for documents in anticipation of this litigation, constitute opinion work product, and there "is no principled basis to distinguish Lexipol from an employee of the County, when the communication was confidential."  (*Id.* at 22-23.)

**PRIV019-PRIV020.**  Plaintiff claims that upon objecting to Defendants' privilege log, on March 1, 2022, Defendants withdrew their claim of privilege as to Priv019 but failed to produce the content of the associated email.  (Dkt. 120 at 12-13.)  As to Priv020, Plaintiff claims that Defendants produced documents relating to this log but did not produce the corresponding email.  (*Id.* at 13.)

14

Defendants state that they provided Priv019 and Priv020 with their amended privilege log on March 1, 2022, but maintain that they did not waive privilege or work product protection for any other emails.  (Dkt. 138 at 23.)

### D.      March 29, 2022 Hearing

On March 29, 2022, the Court held a hearing on Defendants' Sanctions Motion and Plaintiff's Sanctions Motion ("March 29 Hearing") (Dkt. 158.)  At the hearing, the Court granted Defendants' Sanctions Motion in part, denied it in part as moot as to RFP Nos. 17 and 26, and took the motion under advisement as to Defendants' request for civil contempt and sanctions.  (*Id.* at 1.)

The Court also took Plaintiff's Sanctions Motion under advisement.  (*Id.* at 2.)

## II.      LEGAL STANDARD

### A.      Rule 37 Sanctions

Defendants seek sanctions under Rules 37(a)(5), 37(b)(2)(A), and 37(b)(2)(C) of the Federal Rules of Civil Procedure.  (Dkt. 87 at 33-36.)  Rule 37(a)(5)(A) provides in relevant part as follows:

> (A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing)*. If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> > (i)      the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

> (ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (ii)    other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

Under Rule 37(b), a Court may sanction a party for failing to comply with a discovery order.  *See* Fed. R. Civ. P. 37(b)(2)(A).  These sanctions may include:

> (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)    striking pleadings in whole or in part;
>
> (iv)    staying further proceedings until the order is obeyed;
>
> (v)    dismissing the action or proceeding in whole or in part;
>
> (vi)    rendering a default judgment against the disobedient party; or
>
> (vii)    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

"To impose an 'extreme sanction,' such as entering default against a defendant or dismissing a party's claim, the 'strong policy in favor of deciding a case on its merits' demands a showing of egregiousness that justifies depriving the litigant of its chance to be heard." *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, No. 0:17-CV-5009-JRT-KMM, 2020 WL 1910589, at *11 (D. Minn. Apr. 20, 2020) (quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020-21 (8th Cir. 1999)).  "To justify [severe sanctions], Rule 37 requires:

'(1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party.'" *Sentis Gr., Inc. v. Shell Oil Co.*, 559 F.3d 888, 899 (8th Cir. 2009) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)). "A finding of willfulness is not required to impose sanctions less severe than dismissal, default judgment, or striking of pleadings." *Mgmt. Registry*, 2020 WL 1910589, at *12.

Lastly, in accordance with Rule 37(b)(2)(C), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey an order to provide or permit discovery,] unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "Oral proceedings compelling discovery that 'unequivocally give a litigant notice' of the discovery required are a sufficient basis for Rule 37(b)(2) sanctions." *Mgmt. Registry*, 2020 WL 1910589 at *14 (citations omitted) (cleaned up).

## B.   Civil Contempt

A court may punish violation of a lawful court order under the contempt power of the court. *See* 18 U.S.C. § 401(3); Fed. R. Civ. P. 70(e) (court may hold party disobeying judgment for a specific act in contempt); *see also Taylor v. Finch*, 423 F.2d 1277, 1279 (8th Cir. 1970) ("Courts have power to adjudge persons who wilfully disobey their orders to be in contempt and such power extends to both civil and criminal contempt.") (citing Fed. R. Civ. P. 70; 18 U.S.C. § 401; and *United States v. United Mine Workers*, 330 U.S. 258, 302-03 (1947)); *ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 381 F. Supp. 3d 1082, 1089 (D. Minn. 2019) ("18 U.S.C. § 401 establishes two classes of contempt—civil and

criminal."); *BMO Harris Bank N.A. v. Alton Bean Trucking, Inc.*, No. 6:16-CV-6118, 2019 WL 2656215, at *2 (W.D. Ark. June 27, 2019) (citing and quoting the court's inherent authority, 18 U.S.C. § 401, and Fed. R. Civ. P. 70 as bases for court's civil contempt authority).  "Civil contempt is 'designed both to coerce obedience and to compensate the complainant for losses sustained.'"  *Edeh*, 2011 WL 4808194, at *3 (quoting *Chao v. McDowell*, 198 F. Supp. 2d 1093, 1098 (E.D. Mo. 2002)); *see also Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000) ("Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both.  Either incarceration or a fine may accomplish the purpose of coercion, while, where compensation is intended, a fine is imposed, payable to complainant.") (cleaned up).  "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject."  *Chi. Truck Drivers*, 207 F.3d at 504 (citing *United Mine Workers*, 330 U.S. at 290 n.56).

An order finding a litigant in contempt requires a "failure to comply with a 'clear and specific' underlying order."  *Chaganti*, 470 F.3d at 1223 (citation omitted).  "Before a party can be held in contempt for violating a court order, [the party] must have actual knowledge of the order and the order must be sufficiently specific to be enforceable."  *Hazen v. Reagan*, 16 F.3d 921, 924 (8th Cir. 1994) (cleaned up).  The party seeking civil contempt must prove by clear and convincing evidence "that the alleged contemnors violated a court order."  *Chi. Truck Drivers*, 207 F.3d at 505.  If the moving party produces such evidence, then the burden shifts to the non-moving party to show an

18

inability to comply with the court order.  *Id.*  "[A]lleged contemnors defending on the ground of inability must establish: (1) that they were unable to comply, explaining why categorically and in detail; (2) that their inability to comply was not self-induced; and (3) that they made in good faith all reasonable efforts to comply."  *Id.* at 506 (cleaned up).  "Although magistrate judges do not themselves have contempt power, they may certify any contemptuous acts or conduct to a district judge, who may then adjudge that person or party in contempt 'by reason of the facts so certified.'"  *Chi. Truck Drivers*, 207 F.3d at 504 ("In a proceeding before a magistrate judge, disobedience of a lawful order 'shall constitute a contempt of the district court for the district wherein the magistrate is sitting.'") (citing 28 U.S.C. § 636(e)); *see also CoKeM Int'l, Ltd. V. MSI Entm't LLC*, No. 19-cv-3114 (JRT/HB), 2021 WL 6425378, at *1 (D. Minn. Sept. 10, 2021) ("Under the Federal Magistrates Act, 28 U.S.C. § 636(e), federal magistrate judges are authorized to exercise contempt authority in certain limited circumstances.").

## C.     Attorney-Client Privilege

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery. *See* Fed. R. Civ. P. 26.  In general, confidential communications between individuals and attorneys for the purpose of obtaining or rendering legal advice are privileged.[6]  *See*

---

[6]     Federal common law applies to the issue of privilege where subject matter jurisdiction is premised on a federal question, whereas state law applies to the issue of the attorney-client privilege when the subject matter jurisdiction is based on diversity.  *See* Fed. R. Evid. 501; *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir.), *cert. denied*, 484 U.S. 917 (1987); *see also Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2014 WL 1309095, at *5 (D. Minn. Apr. 1, 2014) (citations omitted).  In this case, Plaintiff originally asserted both federal and state law claims, but has now

*Upjohn v. United States*, 449 U.S. 383, 394-95 (1981); *see also United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir. 1977) (The attorney-client privilege is "the long established rule that confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client."). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. The term "client" includes any "person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer." *In re Bieter Co.*, 16 F.3d 929, 935 n.7 (8th Cir. 1994); *see also Martinez v. County of Antelope, Nebraska*, No. 4:15CV3064, 2016 WL 3248241, at *7 (D. Neb. June 13, 2016) ("Individuals, corporations, and government entities can assert the attorney-client privilege. To secure the public's interest in open and honest government, the privilege is somewhat limited when applied to governmental entities. However, when faced with a civil lawsuit pursued by a private litigant, the government entity can assert the attorney-client privilege.") (citations omitted).

The attorney-client privilege applies only to confidential communications made to facilitate legal services, and does not apply where a lawyer acts as a scrivener or business advisor. *See Horvath*, 731 F.2d at 561 (citations omitted); *see also United States v.*

---

voluntarily dismissed all state law claims. (*See* Dkt. 162.) As such, the Court will apply federal common law to the issue of privilege.

*Spencer*, 700 F.3d 317, 320 (8th Cir. 2012) (citation omitted) ("[W]hen an attorney acts

in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business

advisor, the privilege does not apply."); *Diversified*, 572 F.2d at 602 ("A communication

is not privileged simply because it is made by or to a person who happens to be a

lawyer.") (citations omitted).  "The party asserting the attorney-client privilege . . . bears

the burden to provide a factual basis for its assertions." *Triple Five of Minnesota, Inc. v.*

*Simon*, 212 F.R.D. 523, 528 (D. Minn. 2002) (citing *Hollins v. Powell*, 773 F.2d 191, 196

(8th Cir. 1985)); *see also In re Grand Jury Proceedings*, 791 F.2d 663, 666 (8th Cir.

1986).  The privilege belongs to the county and "[p]rotection extends to independent

consultants or contractors who are the functional equivalent of an employee." *See*

*Williams v. Herron*, 2011 WL 555127, at *8 (D. Neb. Feb 8, 2011) (citing *In re Bieter*, 16

F.3d at 938).  Additionally, as specific to counties,

> [A] county acts through the conduct of the County Board, the elected and
> appointed officials, and its employees. As with any entity, when deciding if
> communications with a county are privileged, the court considers whether
> (1) the communication was made for the purpose of securing legal advice;
> (2) the employee who made the communication did so at the direction of her
> superior; (3) the superior was making the request to obtain legal advice for the
> entity; (4) the subject matter of the communication is within the scope of the
> employees' duties; and (5) the communications between the employee and the
> attorney were not disseminated beyond those persons who, because of the
> entity's structure, needed to know its contents.

*Martinez*, 2016 WL 3248241 at *7 (citations omitted); *see also Harvey v. Great Circle*,

No. 4:19-CV-902-NAB, 2020 WL 6544237, at *3 (E.D. Mo. Nov. 6, 2020) ("The

government is entitled to the same attorney-client privilege as any other client in a civil

case. . .  Although the Eighth Circuit has not addressed attorney-client privilege in the

context of government agencies and their contractors, there is no reason to find that this privilege does not also extend to government agencies.").

As to waiver, generally, "[v]oluntary disclosure of attorney client communications expressly waives the privilege. . . ."  *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998) (citations omitted).  The Eighth Circuit Court of Appeals has also explained waiver and protection of privilege generally, as follows:

> The attorney/client privilege is waived by the voluntary disclosure of privileged communications, and courts typically apply such a waiver to all communications on the same subject matter.  Thus, a party wishing to invoke the privilege in responding to document discovery must assert it as to all documents to which it may apply.

*PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 991-92 (8th Cir. 1999) (citation omitted), *cert. denied*, 529 U.S. 1020 (2000).

And Rule 502(a) of the Federal Rules of Evidence dictates the scope of waiver involving a voluntary disclosure of privileged information.  *See U.S. S.E.C. v. Welliver*, No. 11-CV-3076 (RHK/SER), 2012 WL 8015672, at *4 (D. Minn. Oct. 26, 2012) (citations omitted); *see also Prudential Def. Sols., Inc. v. Graham*, 517 F. Supp. 3d 696, 703 (E.D. Mich. 2021) (finding that a voluntary disclosure of privilege waived the privilege as to those documents and Rule 502(a) governed the scope of the waiver); *First Am. CoreLogic, Inc. v. Fiserv, Inc.*, No. 2:10-CV-132-TJW, 2010 WL 4975566, at *5 (E.D. Tex. Dec. 2, 2010) (same).

**D.      Work-Product Doctrine**

The work-product doctrine, first articulated in *Hickman v. Taylor*, 329 U.S. 495

(1947), is codified in Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure, and

provides in pertinent part that:

> [A] party may not discover documents and tangible things that are prepared
> in anticipation of litigation or for trial by or for another party or its
> representative (including the other party's attorney, consultant, surety,
> indemnitor, insurer, or agent). But . . . those materials may be discovered if:
>
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial needs for the
>> materials to prepare its case and cannot, without undue
>> hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A)(i)(ii).  The work-product doctrine serves to "promote the

operation of the adversary system by ensuring that a party cannot obtain materials that his

opponent has prepared in anticipation of litigation."  *Pittman v. Frazer*, 129 F.3d 983,

988 (8th Cir. 1997) (citing *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951

F.2d 1414, 1428 (3d Cir. 1991)).  Documents protected by the doctrine include "trial

preparation documents that contain the fruits of the attorney's investigative endeavors

and any compendium of relevant evidence prepared by the attorney."  *In re Murphy*, 560

F.2d 326, 337 (8th Cir. 1977).

The applicability of the work-product doctrine is factually intensive and depends

on the circumstances of the particular case.  *See Marvin Lumber & Cedar Co. v. PPG

Indus., Inc.*, 168 F.R.D. 641, 645 (D. Minn. 1996).  The Eighth Circuit employs the

following test in determining whether the protection attaches:

> The test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987)) (cleaned up) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 198-99 (1970)).

"While the 'work product' may be, and often is, that of an attorney, the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer." *Diversified Indus.*, 572 F.2d at 603.

Documents prepared in the ordinary course of business are not protected by the work-product doctrine, however, the protection attaches once there is a reasonable prospect of litigation. *Simon*, 816 F.2d at 401. And "[w]here work product is intertwined between prospective litigation and non-litigation business purposes, the work product doctrine should properly attach." *Marvin Lumber*, 168 F.R.D at 645. The party seeking work-product protection bears the burden of establishing it. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997). In so doing, the party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

The work-product doctrine can be categorized into two: ordinary work product and opinion work product.  *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000).  The distinction between the two types of work product is an important one:

> Ordinary work product includes raw factual information. Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories.  Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means.  In contrast, opinion work product enjoys almost absolute immunity and can be discoverable only in very rare and extraordinary circumstances, such as when the materials demonstrate that an attorney engaged in illegal conduct or fraud.

*Id.* (quotations and citations omitted).  The party seeking to overcome the work-product protection bears the burden of establishing substantial need and undue burden.  *Id.*

The work-product doctrine "is not absolute and may be waived."  *Pamida Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002).  The Eighth Circuit has held that a party must intend to disclose a document that is otherwise protected by the work-product doctrine to waive the protection as to that specific document.  *See Pittman*, 129 F.3d at 988; *see also In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666 (JNE/FLN), 2017 WL 5188342, at *5 (D. Minn. March 7, 2017) (finding that "[d]isclosure to a third party of a document otherwise protected as work product waives that protection if 'it has substantially increased the opportunities for potential adversaries to obtain the information'") (quoting Wright & Miller, *supra*, § 2023, and citing various cases).  A waiver of work-product protection may also arise when the party seeking to assert the protection elects to make a testimonial use of the alleged protected materials.  *See United States v. Nobles*, 422 U.S. 225, 239 (1975).

25

The work-product doctrine may be impliedly waived when the party claiming the protection brings a claim "in which the information allegedly protected is crucial and unavailable by other means," intends to waive the protection, and "the interests [of] fairness and consistency mandate a finding of waiver." *Pamida*, 281 F.3d at 732 (citing Wigmore, *Evidence in Trial at Common Law*, § 2327 at 636 (J. McNaughton rev. 1961)). In short, the protection should not be used to shield information that underlies the allegations and claims in a case. *In re Grand Casinos, Inc.*, 181 F.R.D. 615, 622 (D. Minn. 1998).

### III.   ANALYSIS

**A.   Defendants' Sanctions Motion**

As stated above, Defendants seek various forms of sanctions against Plaintiff, including for Plaintiff to pay their attorneys' fees and costs incurred in securing the December 2 Order pursuant to Rule 37(a)(5), as well as attorneys' fees and costs under Rule 37(b)(2)(C) incurred in enforcing the December 2 Order and in bringing the Sanctions Motion. (Dkt. 87 at 33-36.) Defendants also seek an order foreclosing Plaintiff from suggesting a specific amount for emotional distress damages to the jury if he intends to suggest a specific amount to the jury for non-economic damages, yet fails to supplement his Rule 26 disclosures to provide Defendants with a computation of damages and requiring Plaintiff to show cause why he should not be held in civil contempt. (*Id.*) The Court considers each of the requests below.

1.      **Securing the December 2 Order**

As it relates to Defendants' request for attorneys' fees and costs incurred in securing the December 2 Order, the Court finds "other circumstances make an award of [Defendants' attorneys' fees and] expenses unjust."  Defendants voluntarily withdrew their request for sanctions relating to the December 2 Order in a spirit of congeniality and cooperation due to the parties' conferring and after Plaintiff produced supplemental discovery responses.  (Dkt. 71 at 2; *see also* Dkt. 87 at 35.)  Defendants have now renewed that request because they claim Plaintiff's supplemental discovery responses is untimely and deficient.  (Dkt. 87 at 35.)  While the Court understands Defendants' position that they withdrew their request for sanctions at the December 2 Hearing only to be rewarded with Plaintiff's untimely and deficient responses, the Court will not grant Defendants' reinstated request for attorneys' fees and costs incurred in securing the December 2 Order.  The Court recognizes that (unfortunately) this could result in Defendants being less willing to make such concessions in the future, but believes it would be unjust to allow a party to withdraw such a request and then reinstitute it at a later date.  Accordingly, the Court denies Defendants' request for attorneys' fees and costs relating to securing the December 2 Order.

2.      **Sanctions for Enforcing the December 2 Order and in Bringing Defendants' Sanctions Motion**

Defendants also seek attorneys' fees and costs incurred in enforcing the December 2 Order and in bringing their Sanctions Motion.  For the reasons given below, the Court finds that Plaintiff violated the December 2 Order by untimely producing the

supplemental discovery responses and by producing deficient responses, and awards Defendants their reasonable attorneys' fees and costs incurred in connection with enforcing the December 2 Order and bringing Defendants' Sanctions Motion.

As described in Section I.A, at the December 2 Hearing, the Court discussed at length Plaintiff's obligations under Rules 26 and 34 of the Federal Rules of Civil Procedure and specifically addressed what Plaintiff's supplemental discovery responses were to include.  (*See generally*, Dkt. 83.)  At the end of the December 2 Hearing, the Court asked Plaintiff's counsel whether she had concerns about the January 7, 2022 deadline proposed by the Court, and she responded, "The timing in terms of being able to provide the supplementation, no, your Honor. . . I can certainly do that."  (*Id.* at 61:25-62:6.)  However, Plaintiff did not serve the Court-ordered supplementation until January 12, 2022, five days after the deadline.  (Dkt. 91.)

Plaintiff did not contact Defendants to seek a consent extension prior to the deadline expiring.  (*See* Dkt. 108 at 8.)  Nor did Plaintiff seek an extension from this Court or inform Defendants of an expected delay in producing the supplemental discovery responses.  Faced with Defendants' Sanctions Motion, Plaintiff asserts that "Counsel's lateness was not out of disrespect or disregard for the Court's Order but due to some unforeseen circumstances," including that Plaintiff's counsel's "paralegal quit suddenly on December 3, 2021, one day after the Court's hearing;" that due to the Omicron COVID-19 variant, counsel was forced to return her daughter to college by car; and that counsel had a trial scheduled in another case for January 17, 2022.  (*Id.* at 8.) These excuses do nothing but emphasize the fact that Plaintiff had ample time to work

out an extension with Defendants or seek an extension from the Court but failed to do so. First, Plaintiff has not explained why the January 17, 2022 trial required an extension of the January 7 deadline—or why counsel didn't raise this issue during the December 2 Hearing rather than stating "I can certainly do that" when the Court asked about the January 7 deadline.  Second, Plaintiff has not explained why an extension was not sought when the paralegal quit on December 3, or as soon as Plaintiff's counsel realized this would delay the supplementation.  Lastly, while the Court is aware of and is sympathetic to the effects of the COVID-19 pandemic, given that the proffered reason for the delay is the fact that counsel had to drive her daughter to college (rather than illness), the Court finds this does not justify the untimely supplementation, or explain why counsel did not simply ask Defendants for an extension.  Neither an opposing party nor the Court should be left guessing as to whether or when a party will comply with the Court's Order requiring supplementation by a certain date.  This conduct supports an award of attorneys' fees and costs.

Additionally, a review of Plaintiff's supplemental discovery responses reveals Plaintiff failed to comply with the December 2 Order.  As to the RFPs at issue, the Court specifically required Plaintiff to "supplement [his] responses to the requests for production as well to make it clear that the document production has been updated and if to the extent any documents are being withheld based on objections, [Plaintiff] need[s] to make that clear as well" and indicate that all responsive documents have been produced. (*See* Dkt. 83 at 28:2-10, 42:12-17.)  Plaintiff's supplemental discovery responses do not provide the required clarity, and instead refer to previously produced discovery responses

29

and documents.  (*See* Dkt. 91 at 3-6.)  They also fail to state whether any documents are being withheld based on objections or whether all responsive documents have been produced.  (*See id.*)

As one example, RFP No. 17 seeks "All documents received by Plaintiff in any format from any person (not Plaintiff's attorney) that relate to any allegations made by Plaintiff in this matter."  (Dkt. 91 at 3.)  Plaintiff's January 12 supplemental response states, "These documents were previously provided to Defendants.  See also Plaintiff's Supplemental Answers to Request for Documents from Defendants, dated 9/3/2021 for supplemental documents from the Special Prosecutor 1 and 2.  See also Expert Report of Dr. Greenstone."  (*Id.*)  Defendants explained at the March 29 Hearing that because the supplemental response did not identify the BCA file or Ramsey County Attorney's Office case disclosures, they were concerned that the supplemental responses were not thorough. As another example, RFP No. 2 seeks "[a]ny and all documents referring to or relating in any way to any alleged improper conduct on behalf of Defendants."  (Dkt. 91 at 3.)  The January 12 supplemental response states, "Supplemental Answer: These documents were provided to Defendants with the BCA file.  See also Plaintiff's Supplemental Answers to Request for Documents from Defendants, dated 9/3/2021 for supplemental documents from the Special Prosecutor 1 and 2."  (*Id.*)  At the hearing, Plaintiff stated that a subsequent supplementation of this response, served on February 14, 2022, specifically identified documents by name in response to RFP No. 2.  But one of the documents was identified as the "Minnesota Department of Health documentation of death."  (Dkt. 147-10 at 3.)  Because Defendants could not find a "Minnesota Department of Health

documentation of death" in Plaintiff's production, they stated in a February 25, 2022

letter:

> We do not possess a document by this title.  However, we are in possession
> of a Certificate of Death that Plaintiff attached to various document requests
> while gathering records on Ben Evans.  Please let us know whether the "MN
> Department of Health Documentation of Death" is the Certificate of Death.
> If it is not, please produce this record referenced in Response to Request for
> Production of Documents No. 2.

(Dkt. 130-3, Ex. 4 at 1.)  Apparently, Plaintiff did not respond to this letter, and, a month

later, at the March 29 Hearing, could not state whether the document at issue was the

autopsy report or the Certificate of Death.  There is no reason why Defendants should

need to seek relief from the Court to get an answer to this straightforward question.

Finally, at the March 29 Hearing, Plaintiff made several representations that all

responsive documents had been produced as to certain RFPs, which resolved the disputes

as to those RFPs.  On December 2, 2021, the Court ordered Plaintiff to provide responses

that stated whether all responsive documents had been produced or whether documents

were being withheld based on objections by January 7.  (*See* Dkt. 83 at 28:2-10, 42:12-

17.)  Plaintiff's failure to do so, and failure to timely respond to Defendants' inquiries,

necessitated Defendants' Sanctions Motion and warrants an award of attorneys' fees and

costs incurred in enforcing the December 2 Order and bringing the Motion.

With respect to Interrogatory No. 17, the Court ordered Plaintiff on December 2

"to provide the computation for the categories of damages in response to the

interrogatory [request] and in [his] supplemental initial disclosures," clearly state whether

he is unable to provide the basis for any particular damages category, and identify the

documents used in calculating damages, including "checks," "receipts," and all other documents relied on.  (Dkt. 83 at 13:3-17, 14:1-15, 15:6-11.)  Plaintiff's supplemental response to this Interrogatory is completely devoid of any such calculations.  (*See* Dkt. 95 at 5-6.)  While Plaintiff references data by the U.S. Bureau of Labor Statistics and the National Vital Statistics Report as sources for damages calculations, he does not provide any computation or explanation.  For example, Plaintiff seeks "Care, Comfort, Guidance, and Support" damages in the amount of $8,720,340.00 "for the remainder of each of the next-of-kin's life expectancy" and cites the National Vital Statistics Report, vol. 68, No. 7, June 24, 2019, p. 12-15.  (Dkt. 95 at 6.)  There is no explanation of how Plaintiff calculated this $8,720,340.00 amount (*see id.*), even though Plaintiff's counsel's argument at the March 29 Hearing made it clear that there was some sort of computation for each of the decedent's parents, child, brother, and stepfather.  Plaintiff should have included these computations in the response.  Similarly, Plaintiff seeks $30,100.00 in "Evans Family Expenses," based on "the Evans' Family expenses spreadsheet."  (*Id.*)  At the March 29 Hearing, Plaintiff agreed that because he was not seeking damages for mental health expenses, the $30,100.00 was incorrect.  While the Court would not normally award sanctions based on a simple error, the question of mental health expenses was discussed at the December 2 Hearing (Dkt. 83 at 7:7-15), and the inclusion of those expenses in the January 12 supplementation (Dkt. 95 at 6) is one example of an inconsistent and confusing response that required Defendants to take further action, including seeking relief from the Court.

Moreover, Plaintiff's counsel stated at the March 29 Hearing that Plaintiff had no records to back up the $10 million in punitive damages and no calculations to support the $10 million in "loss of life" damages he seeks. At the December 2 Hearing, the Court explained:

> If your position is that you can't [provide the computation for the categories of damages] for some category, if you're saying that loss of life is valued at $10 million, and that's based on -- based on sort of nothing other than the number that you think is worth the loss of life, you know, you should be clear about what the basis is. But the concern here is that you have some kind of calculation or documents or evidence that is, you know, in your head and you know what's going on but it's not been disclosed to defendant yet. So you need to supplement your response to the Interrogatory Number 17 to answer the questions that are asked and supplement your initial disclosures as to damages.

(Dkt. 83 at 14:16-15:2.) Plaintiff's failure to make clear the basis for his damages claims, including the "loss of life" and punitive damages, as ordered on December 2, further justifies sanctions.

In sum, at the March 29 Hearing, the Court granted Defendants' Sanctions Motion in part insofar as it sought an order compelling Plaintiff to supplement his discovery responses and denied it in part as moot based on Plaintiff's supplementation in February, after Defendants filed the Motion on January 28, 2022. (Dkts. 85, 158.) This warrants sanctions under Rule 37(b)(2)(C), and the Court finds that the exceptions under Rule 37(b)(2)(C) are inapplicable. Under these circumstances, the Court finds it appropriate to award Defendants their reasonable attorneys' fees and costs incurred in enforcing the Court's December 2 Order and in connection with bringing Defendants' Sanctions Motion against Plaintiff. *See Krueger v. Ameriprise Fin., Inc.*, Civ. No. 11-2781

(SRN/JSM), 2014 WL 8108458, at *7-8 (D. Minn. July 7, 2014) (awarding attorneys' fees and costs under Rule 37(b)(2)(C) due to the defendant's failure to timely produce the discovery ordered by the court and defendant's failure to ensure that its belated production contained all responsive materials.).  Defendants shall serve a declaration of their legal counsel setting forth the amount of reasonable attorneys' fees and costs they seek in connection with their attempts to enforce the December 2 Order and bringing Defendants' Sanctions Motion within fourteen (14) days of the date of this Order.  If Plaintiff does not agree to the amount of the attorneys' fees and costs, he may submit his dispute to the Court within seven (7) days after receiving the amount, and Defendants may file a response to Plaintiff's filing within seven (7) days later.

### 3.   Non-Economic Damages

Pursuant to Rule 37(b)(2)(A), Defendants asked the Court to foreclose Plaintiff from suggesting a specific amount for emotional distress damages to the jury if he intends to suggest a specific amount to the jury for non-economic damages, yet fails to supplement his Rule 26 disclosures to provide Defendants with a computation of damages.  (Dkt. 87 at 35-36.)  Plaintiff's non-economic damages in this case include over $8.7 million for "Care, Comfort, Guidance, and Support," $10 million in "Loss of Life," and $10 million in punitive damages.  (Dkt. 95 at 5-6; *see also* Dkt. 93 at 11-12.) Plaintiff, however, has failed to provide any computation for the damages or the basis for those figures.  (*See id.*)  At the December 2 Hearing on the Motion to Compel, citing Rule 26 of the Federal Rules of Civil Procedure and *Henderson v. City of Woodbury*, Civ. No. 15-3332 (RHK/FLN), 2016 WL 11020056 (D. Minn. July 22, 2016), the Court

reminded Plaintiff of his "requirement to identify and provide a computation for damages that are sought" and ordered Plaintiff to supplement his Rule 26 disclosures accordingly. (Dkt. 83 at 13:3-25, 16:12-15.)  Plaintiff's January 12, 2022 supplemental Rule 26 disclosures did not do so.  (*See* Dkt. 93.)

Courts in this District have found that a plaintiff may be foreclosed from suggesting a specific amount of damages to the jury if the plaintiff intends to suggest such an amount but fails to provide a computation or the evidence and basis for the damages in its Rule 26 disclosures.  *See Lewis v. City of Burnsville*, Civ. No.19-1117 (ECT/BRT), 2020 WL 3496990, at *4 (D. Minn. June 29, 2020) ("[I]f Plaintiff intends to ask the jury for a specific dollar amount of such damages at trial—or to suggest any figures, or possible ranges—Plaintiff is required to provide it to Defendants along with the basis for that figure.  Plaintiff cannot 'reserve' such disclosure until after fact discovery closes.  Further, even if Plaintiff does not intend to ask for a specific amount (or suggest any figure or range) but intends to offer evidence supporting any non-economic award, Plaintiff must disclose responsive discovery regarding the claim. . . . 'While it is true that the ultimate amount of non-economic damages, if any, to be awarded Plaintiff will be determined by a jury, in this Court's view, that does not relieve the Plaintiff from disclosing any specific evidence they intend to utilize at trial in support of their request for emotional distress from disclosing any dollar range they intend to request from the jury.  Otherwise, Plaintiff could surprise the defendants at trial with a specific request of $1,000,000 for claimed emotional harm that was never previously disclosed contrary to the spirit and intent of the applicable discovery Rules.'") (cleaned

CASE 0:20-cv-02474-MJD-ECW   Doc. 192   Filed 05/16/22   Page 36 of 61

up); *see also Henne v. Great River Reg'l Libr.*, No. 19-cv-2758 (WMW/LIB), 2021 WL 6804560, at *19-20 (D. Minn. Jan. 4, 2021) ("If Plaintiff does not provide information regarding any specific amount of punitive or emotional distress damages that she will be claiming at trial at this juncture, then she may be precluded from requesting a specific amount at trial.  Moreover, Plaintiff must also provide Defendants with the basis for her claimed non-economic damages, including the facts that support her claims for emotional distress and punitive damages, as well as, the methodologies used to calculate any non-economic damage figures.") (citations omitted)).

The Court did not address Plaintiff's Rule 26 disclosures at the March 29 Hearing, although the Court did find Plaintiff's supplementation of his response to Interrogatory No. 17 (directed to damages and served on the same day) did not comply with the December 2 Order, and gave him the opportunity to again supplement his response to Interrogatory No. 17 by April 12, 2022.  (*See* Dkt. 158 at 1-2.)  Further, the Court previously ordered Plaintiff to supplement his Rule 26 disclosures at the December 2 Hearing.  (Dkt. 83 at 13:3-15:11.)  In view of the fact that Defendants have since filed a motion for sanctions relating to Plaintiff's non-economic damages, namely an alleged failure to supplement his Rule 26 disclosures and response to Interrogatory No. 17 in compliance with the Court's order at the March 29 Hearing (Dkt. 180), the Court will address these issues in connection with the Defendants' motion filed on April 29.

4. **Whether Plaintiff Should Show Cause Why He Should Not Be Held in Civil Contempt**

Finally, Defendants seek an order requiring Plaintiff to show cause why he should not be held in civil contempt. To the extent Defendants seek a finding of civil contempt to obtain an order requiring Plaintiff to supplement his responses to the discovery at issue in Defendants' Sanctions Motion and an award of reasonable attorneys' fees and costs, the Court denies this request as moot. If Defendants seek additional sanctions as a result of the alleged civil contempt, or seek a specific finding of civil contempt for purposes of the finding alone, the Court will hear additional argument on this request at the hearing on their April 29 motion for sanctions, and will permit or order supplemental briefing from the parties as necessary.

The Court turns to Plaintiff's Sanctions Motion.

B. **Plaintiff's Sanctions Motion**

Plaintiff asks the Court to order Defendants to supplement their initial disclosures and discovery responses to include the identities of the authors and recipients of the emails in Defendants' Amended Privilege Log. (*See* Dkt. 120.) Plaintiff also seeks attorneys' fees and costs incurred in bringing this Motion pursuant to Rule 37. (*Id.*)

Defendants respond that they served Supplemental Initial Disclosures to include the persons listed on the Privilege Log on February 24, 2022. (Dkt. 138 at 8-9, 33.) Defendants further maintain that production of the emails at issue is unwarranted because they are protected by the work product doctrine and/or the attorney client privilege, as

well as under Minn. Stat. § 13.39.[7]  (*Id.* at 12-25; *see also* Dkt. 121-10 at 1-7 (Amended Privilege Log).)

### 1.   Defendants' Initial Disclosures

Plaintiff moved on March 17, 2022 for "[a]n order to compel Defendants to supplement their discovery responses to reflect the presence, knowledge, and identities of all individuals thus far missing from their discovery responses."  (Dkt. 136 at 1.)  The only such individuals identified by Plaintiff are those on the Privilege Log, which are the same as those listed on the Amended Privilege Log.  (Dkt. 120 at 2-4; *see also* Dkts. 121-5, 121-10 .)  However, Defendants supplemented their Rule 26 disclosures on February 24, 2022—before Plaintiff filed his Sanctions Motion—to "expressly include[] the persons listed on the Privilege Log."  (Dkt. 138 at 33.)  And while Plaintiff states the failure to identify these persons earlier interfered with his ability to conduct discovery, he did not request any amendment of the schedule or discovery limitations to address those concerns.  (Dkt. 120 at 4.)  Accordingly, the Court denies as moot Plaintiff's Sanctions Motion insofar as it seeks an order compelling Defendants to supplement their discovery

---

[7]    Plaintiff has dismissed all state law claims in this action.  (*See* Dkt. 162.)  Plaintiff suggests that no law of privilege applies to the emails in the Amended Privilege Log because he dismissed his state law claims.  (*See* Dkt. 120 at 13; Dkt. 123; Dkt. 162.)  That is not the case.  Plaintiff asserts claims under federal statutes, including 42 U.S.C. § 1983, and a related conspiracy claim.  (Dkt. 1 ¶¶ 75-92.)  As discussed in footnote 6, the federal common law of privilege applies in this case.  Additionally, because the Court finds the emails at issue are privileged and/or work product protected, it need not reach the parties' argument as to the applicability of Minn. Stat. § 13.39.  *See Regents of the Univ. of Minn. v. United States*, 340 F.R.D. 293, 316 n.10 (D. Minn. 2021).

responses and Rule 26 disclosures to identify the persons listed on Defendants' Privilege Logs.

**2.  Whether the Emails at Issue Are Protected by the Work-Product Doctrine and/or Attorney-Client Privilege**

**a.  When Defendants Reasonably Anticipated Litigation**

The emails at issue were generated between July 24, 2019 and November 7, 2019. (Dkt. 121-10.)  Plaintiff suggests the emails, or at least some of them, were therefore created in the ordinary course of business because Plaintiff did not file this action until December 4, 2020.  (*See* Dkt. 120 at 7-8 (arguing the emails were created in the ordinary course of business because "[l]itigation in the matter before this Court had not commenced in July 2019").)  Because this presents a threshold issue as to work-product protection, the Court first addresses the question of when Defendants reasonably anticipated litigation such that work-product protection could attach.

On July 23, 2019, an article describing law enforcement's shooting of the decedent published in the Pioneer Press which stated that Plaintiff's counsel of record in this action, "who specialize in wrongful-death cases," had been retained by Plaintiff and the decedent's mother.  (*See* Dkt. 139-1, Ex. 1 at 19-23.)  The affidavit of Defendants' counsel of record, Vicki Hruby, states that Defendants retained her law firm Jardine, Logan, & O'Brien, PLLP ("Jardine Logan") to provide services in anticipation of litigation on the same day after Washington County received notice of threatened litigation by the decedent's family members from the news media.  (Dkt. 139 ¶ 3.)  On July 25, 2019, Jardine Logan "sent a letter requesting the County gather specific

documents that counsel deemed relevant and of importance to investigate potential claims and defenses related to the officer involved shooting on April 12, 2018," and in so doing, "exchanged confidential and privileged emails with County representatives to gather documents and continue [their] investigation of potential claims and defenses stemming from the anticipated litigation." (*Id.* ¶¶ 4-5.) Plaintiff identifies no reason why Defendants would not have reasonably anticipated litigation based on the July 23, 2019 Pioneer Press article.

Based on these facts, the Court finds that Defendants reasonably anticipated litigation at least as of July 23, 2019, notwithstanding the fact that Plaintiff did not file suit until December 4, 2020. *See Safco Prod. Co. v. Welcom Prod., Inc.*, No. 08-4918 (JRT/JJG), 2010 WL 11252007, at *4 (D. Minn. Feb. 10, 2010) ("[L]itigation may be anticipated long before it is actually commenced."). Moreover, "work product protection may arise even when there has been no explicit threat of litigation so long as the prospect of litigation is 'identifiable because of specific claims that have already arisen.'" *S.T. Specialty Foods, Inc. v. Copesan Servs. Inc.*, No. 19-CV-0339 (NEB/HB), 2020 WL 30281, at *5 (D. Minn. Jan. 2, 2020); *see also Wells Fargo & Co. v. United States*, Nos. 1-57 (JRT/JJG), 10-95 (JRT/JJG), 2013 WL 2444639, at *31 (D. Minn. June 4, 2013) ("To receive work product protection, documents must be prepared after a 'specific threat' of litigation became 'pallable.'") (citations omitted).

Plaintiff also suggests that at least some of the emails must have been generated in the ordinary course of business rather than in anticipation of litigation because they were sent before he filed this action. (*See* Dkt. 120 at 7-8.) In view of the Court's conclusion

that Defendants reasonably anticipated litigation as of July 23, 2019, and the statements in the Hruby Declaration as to emails and letter sent by counsel regarding the collection of relevant documents (Dkt. 139 ¶¶ 4-5), the Court finds this argument, which is based on nothing more than the emails' dates, unpersuasive.

### b.   Priv019 and Priv020

The Court turns to the emails at Priv019 and Priv020, which Defendants produced on March 1, 2022.  (*See* Dkt. 139-5, Exs. 14-15 at 1-5.)  Plaintiff claims in the Sanctions Motion that after "Plaintiff objected, Defendants supplemented their Privilege Log on March 1, 2022, withdrawing their claim of privilege to Priv019 but did not produce the content of the actual email.  Defendants also produced documents relating to Priv020, but did not produce the actual email[.]"  (Dkt. 120 at 12-13.)  Defendants, however, maintain that they "provided Priv019 and Priv020 with Defendants' Amended Privilege Log on March 1, 2022" to Plaintiff.  (Dkt. 138 at 23.)  At the March 29 Hearing, Plaintiff did not dispute that these emails had been produced but took issue with the fact that the emails were "blank."  Plaintiff filed the emails constituting Priv019 and Priv020 in connection with his Sanctions Motion.  (*See* Dkt. 121-10 at 8, 10.)  The Court's review of Priv019 and Priv020 shows each email is a cover email forwarding one document (Priv019) and five documents (Priv020).  (*See id.* at 8-9 (Priv019), 10-34 (Priv020).)  The cover emails contain header information and a signature block, but no other content.  (*See id.* at 8, 10.)  The Court sees nothing unusual about a person forwarding a document without comment, and Defendants' counsel confirmed at the hearing that they had not withheld any content

from those emails.  Accordingly, the Court denies Plaintiff's request as to Priv019 and

Priv020 because Defendants have produced the emails and attachments.

Plaintiff also argues that the "Privilege Log is wholly suspect because Defendants

have withdrawn and waived asserted privilege" as to Priv019 and Priv020.  (Dkt. 120 at

12.)  It is unclear what Plaintiff means.  As discussed above, there is nothing suspect

about the Priv019 and Priv020 cover emails.  Further, in response to Plaintiff's concerns

about Defendants' assertions of privilege, Defendants reviewed their assertions of

privilege, recognized that the assertion for Priv019 was in error and waived its assertion

of privilege under Minn. Stat. § 13.43.  (Dkt. 139-5, Ex. 14 at 5.)  This does not render

the rest of the privilege log suspect, instead it demonstrates Defendants' willingness to

consider Plaintiff's arguments and respond appropriately.  Finally, to the extent Plaintiff

argues that the production of Priv019 and Priv020, and waiver of any privilege or

protection as to those documents, results in a waiver of Priv001 to Priv018, he has not

supported that argument with any legal authority or supporting facts, and the Court

rejects it.

### c.     Priv001 and Priv002

The Court turns to Priv001 and Priv002.  The Amended Privilege Log describes

these as emails "regarding legal opinions, advice, strategies and mental impressions of"

two Washington County attorneys on "talking points for Commissioners" and "talking

points for public."  (Dkt. 139-1, Ex. 2 at 1-2.)  Defendants assert both the attorney-client

privilege and work-product protection for Priv001 and Priv002.

As to attorney-client privilege, Plaintiff does not argue attorney-client privilege is inapplicable to the emails at Priv001 and Priv002 but claims that Defendants waived privilege for the contents of those emails, based on the phrase "talking points" in the description, "because the Commissioners talked about their contents to the public." (Dkt. 120 at 5-6.) In the affidavit supporting Defendants' Opposition to Plaintiff's Motion to Compel, Attorney Hruby attests that these emails (as well as the emails at Priv003 to Priv018) are not "part of the public record and they have not been disclosed in this matter." (Dkt. 139 ¶ 9.) Defendants also argue that Plaintiff has produced no evidence that the emails or their contents were shared with the public, notwithstanding the public availability of the County Board's agendas and minutes on the Internet. (Dkt. 138 at 17-18 & n.1.) Defendants argue that "Plaintiff's assumption ignores that such opinions and advice from the County Attorney to Commissioners constitutes attorney-client privileged communications." (*Id.* at 18.)

At least one court in this District has found that "talking points" created by counsel, under certain circumstances, may not be privileged or may constitute a mixture of legal and business advice such that production in a redacted form is appropriate. *E.g.*, *ADT Sec. Servs., Inc. v. Swenson*, Civ. No. 07-2983 (JRT/AJB), 2010 WL 276234, at *3 (D. Minn. Jan. 15, 2010) (concluding, after *in camera* review, that emails containing "talking points" should be produced or produced in redacted form), *rev'd in part on other grounds*, Civ, No. 07-2983, 2010 WL 2954545 (D. Minn. July 26, 2010). Although Defendants have represented to the Court that the documents contain attorneys' legal opinions, advice, strategies and mental impressions as to the "talking points," and argue

there is no evidence that any Commissioner conveyed any of the "talking points" to the public, because Defendants bear the burden of establishing privilege and the undisputed fact that the privilege log describes the opinions, etc., as relating to "talking points" for the public or Commissioners, the Court orders Defendants to submit the emails at Priv001 and Priv002 for *in camera* review by emailing them to the undersigned's chambers within seven (7) days of the date of this Order.

The Court also considers the question of work-product protection as to Priv001 and Priv002. As discussed in Section III.B.2.a, the Court finds that Priv001 and Priv002 were created in anticipation of litigation and were not prepared in the ordinary course of business. Plaintiff also contends that Attorney Hansen has not personally asserted that these emails are her work product.[8] (Dkt. 120 at 8.) But that does not answer the question of whether the emails are "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," Fed. R. Civ. P. 26(b)(3), or "can be fairly said to have been prepared or obtained because of the prospect of litigation," *Simon*, 816 F.2d at 401. Defendants have filed a retainer agreement between Washington County and Attorney Hansen's law firm covering the relevant period. (Dkt. 139-1, Ex. 3 at 8-11.) Under the plain language of Rule 26(b)(3), Attorney Hansen is the County's "representative," making work-product protection applicable. *See id.* (stating that a party's "representative" includes the party's "attorney,

---

[8]    Plaintiff cites *In re Bair Hugger* to support this "personal assertion" argument (Dkt. 120 at 8), but did not provide a pin cite, and the Court finds nothing in that case to suggest that Attorney Hansen was required to provide an affidavit or declaration to support Defendants' assertion of work-product protection here.

consultant, surety, indemnitor, insurer, or agent").  An affidavit or declaration from Attorney Hansen is not required to establish work-product protection.

However, as noted above, the Court requires *in camera* review to determine if Defendants waived attorney-client privilege as to Priv001 and Priv002.  As to waiver of work-product protection, disclosure of a document protected by the work-product doctrine waives the protection if the disclosure "'has substantially increased the opportunities for potential adversaries to obtain the information.'"  *Regents*, 340 F.R.D. at 305 (quoting *In re Bair Hugger*, 2017 WL 5188342, at *5).  For the reasons stated with respect to waiver of the privilege as to Priv001 and Priv002, the Court will review these emails *in camera* to determine if privilege and work-product protection were waived.

### d.   Priv003 to Priv007 and Priv013 to Priv015

Priv003 to Priv007 and Priv013 to Priv015 constitute internal emails between County employees (with no attorney sender or recipient) for which Defendants claim privilege and work-product protection on the basis that they are either "[e]mails regarding search for . . . documents requested by legal counsel on Evans' claim" or pertain to "additional information requested by legal counsel on Evans' claim."  (Dkt. 121-10 at 3-7.)  Plaintiff argues Defendants have not provided clarity as to whether the emails at Priv003 to Priv005 were accompanied by attachments and cites to *MPAY*, *supra*, for the proposition that disclosure of any such attachment may implicate privilege or work product protection.  (Dkt. 120 at 8-9.)

In *MPAY*, the defendants claimed the emails in their privilege log were privileged or protected but did not identify whether or not those emails were accompanied by

45

attachments.  *See MPAY*, 2020 WL 748237 at *4-5.  Even though they were urged by the

plaintiff, the defendants failed to clarify whether the emails at issue were accompanied by

attachments, failed to amend their privilege log, and falsely represented to the court and

plaintiff that there were no attachments being withheld from production.  *Id.* at *5.  After

several inquiries by the court, the defendants eventually informed the court and plaintiff

that there were in fact attachments that had not been identified or produced, produced

certain attachments, and long after the discovery deadline, sought to assert privilege or

protection as to attachments "that were not logged or submitted to the Court for in-

camera review."  *Id.* at *5-6.  U.S. Magistrate Judge Becky R. Thorson granted the

plaintiff's motion to compel, finding the defendants waived "any privilege or protection

for all attachments to the challenged emails in three ways," namely because the

defendants: (1) had multiple opportunities to assert privilege or work-product protection

when preparing their privilege log but failed to do so and contended that the attachments

were not logged "because they were not privileged or protected"; (2) previously

represented at a hearing that no attachments had been withheld, which indicated that

privilege or protection was not asserted; and (3) failed to submit any withheld

attachments to the court for *in camera* review when ordered to do so.  *Id.* at *6.  Notably,

the defendants in *MPAY* were trying to assert privilege or work-product protection for

documents that fell into those three categories.  *Id.* at *6.

Those circumstances are not present here.  First, Defendants are not trying to

assert privilege or work-product protection over the attachments to Priv003 to Priv007

and Priv013 to Priv015.  Moreover, as for the attachments, Attorney Hruby attests that

"[n]o underlying documents have been withheld by Defendants pursuant to a claim of privilege and/or work product" and that "[i]f an underlying document, including an email attachment had been withheld due to privilege, it would have been specifically identified on Defendants' Amended Privilege Log."  (Dkt. 139 ¶ 10.)  Indeed, Plaintiff has not identified any documents he believes have been withheld, and is instead asserting that "[p]rivilege may have been waived if the underlying documents have been produced." (Dkt. 120 at 8.)  While it is true that *MPAY* suggests that under some circumstances, production of an attachment **could** result in a waiver as to the corresponding email, 2020 WL 748237, at *2, *MPAY* did not find as a general rule that production of an attachment requires production of the corresponding email, or even that *in camera* review is required simply because a party produced an email's attachment.  Here, where the log entries describe the emails at issue as "regarding search for Benjamin Evans documents requested by legal counsel on Evans' claim" and "additional information requested by legal counsel" as to the same, and in the absence of any reason why the production of documents obtained as a result of a search for documents would result in waiver as to otherwise protected emails sent regarding the search, the Court concludes that *in camera* review is unnecessary to determine if waiver occurred.

Plaintiff also contends that "Defendants are attempting to protect as privileged communications with the entire records department at Washington County since the [Amended] Privilege Log fails to identify the individual who received that email."  (Dkt. 120 at 10.)  Plaintiff does not identify the emails that give rise to this assertion, but based on the Amended Privilege Log, the Court assumes Plaintiff means the email at Priv006,

which was sent from Ellickson to "WSCO Records" and is described as "requesting additional information requested by legal counsel on Evans' claim," and the email at Priv015 sent from Shim to Ellickson and "WSCO Records," described as an email "regarding additional information requested by legal counsel on Evans' claim." (Dkt 121-10 at 4, 6-7.) Contrary to Plaintiff's assertions, nothing in the Amended Privilege Log creates the inference that Defendants are seeking to "protect as privileged communications with the entire records department at [the County.]" Defendants Amended Privilege Log is seven pages long and the emails at issue constitute two of at least thirty emails.

Plaintiff further argues that the emails at Priv006-Priv007 and Priv013-Priv015 were authored and received by County employees, who "were not communicating directly with legal counsel," and citing Rule 26(b)(5)(A), claims that the "privilege log is not detailed enough to prove that the communication in question were in fact confidential communications relating to legal advice." (Dkt. 120 at 9.) This argument, to some extent, ignores the fact that Defendants have asserted work-product protection as to the emails. The Eighth Circuit has explicitly held that "[w]hile the 'work product' may be, and often is, that of an attorney, the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer." *Diversified Indus.*, 572 F.2d at 603. Given the emails at issue were sent after the County reasonably anticipated litigation as of July 23, 2019 and the statements in the Hruby Declaration regarding emails and communications sent regarding Jardine Logan's investigation of the underlying facts and collection of relevant documents, the Court concludes that the

absence of an attorney recipient or sender does not mean Defendants have not met their burden of showing the emails were prepared or obtained in anticipation of litigation, and therefore protected by the work-product doctrine. *See Ellenbecker v. BNSF Railway Co.*, 4:19CV3038, 2019 WL 6771827, at *2 (D. Neb. Dec. 11, 2019) ("Work product protection 'applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation.")  (citations omitted); *see also In re Tier 2 Jeg Telecomms. Cases*, 4:09-cv-00262, 2012 WL 13033192, at *2-3 (N.D. Iowa Sept. 26, 2012) (finding work product protection applied to documents where the prepares were non-lawyers and had yet to retain an attorney but prepared the documents in anticipation of litigation and stating "whether a document is protected as work-product depends on the motivation behind its preparation, rather than on the person who prepared it.") (citations omitted); *Shannon v. Koehler*, 257 F.R.D. 519, 520-21 (N.D. Iowa 2009) (finding an internal police department's memorandum created without the involvement of an attorney and a week after the plaintiff initiated a lawsuit regarding an alleged excessive force incident against several members of the police department was protected work product).

Moreover, to the extent Plaintiff challenges the sufficiency of the Amended Privilege Log as "not detailed enough" (Dkt. 120 at 9), the Court finds the Amended Privilege Log meets the requirements of Rule 26(b)(5)(A).  It contains seven columns labeled "Doc. No.," "Doc. Date," "Author Source," "Recipients," "CC," "Description," and "Privilege Basis."  (*See* Dkt. 121-10 at 1.)  The Amended Privilege Log describes each document using phrases such as "Email regarding legal opinions, advice, strategies

49

and mental impressions of Attorney Susan Hansen on talking points for Commissioners," "Email regarding search for Benjamin Evans documents requested by legal counsel on Evans' claim," "Email with additional information requested by legal counsel on Evans' claim," and "Email attaching Sherriff's Office Policies on 4/12/18 requested by legal counsel on Evans' claim," and provides the date the communication was made along with the names of the senders and recipients. (*See id.* at 1-7.) The Court thus concludes that the log describes the documents "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(b)(5)(A); *Luminara Worldwide, LLC v. Liown Elecs. Co.*, Civ. No. 14-3103 (SRN/FLN), 2015 WL 9861106, at *3 & n.1 (D. Minn. Oct. 5, 2015) (finding initial descriptions of "Legal advice re license," "Legal advice re intellectual property," and "Legal advice re litigation" insufficient but more detailed descriptions adequate), *objections overruled*, No. 14-cv-03103 (SRN/FLN), 2016 WL 6774229 (D. Minn. Nov. 15, 2016).

Accordingly, for all of these reasons, the Court finds the emails at Priv003 to Priv007 and Priv013 to Priv015 are protected by the work-product doctrine and Defendants have not waived that protection. Further, Plaintiff has not shown (or argued) a substantial need for the emails. The Court therefore denies Plaintiff's Sanctions Motion insofar as it seeks production of Priv003 to Priv007 and Priv013 to Priv015. Because the denial is based on work-product protection, the Court need not and does not reach the issue of attorney-client privilege as to Priv003 to Priv007 and Priv013 to Priv015.

### e.  Priv008 to Priv012 and Priv016 to Priv018

The Court lastly considers the emails at Priv008 to Priv0012 and Priv016 to Priv018.  The emails at Priv008 to Priv012 were sent between County employees and a Lexipol representative and are described in the Amended Privilege Log as "attaching" and "regarding" "Sheriff's Office Policies on 4/12/18 requested by legal counsel on Evans' claim."  (Dkt. 121-10 at 5-7.)  Priv016 to Priv018 constitute emails between County employees (with no outside representatives or attorneys involved) regarding "Sheriff's Office Policies on 4/12/18" and "Sheriff's Office Policy Manual requested by legal counsel on Evans' claim."  (*Id.*)

Plaintiff argues that the communications between Defendants and Lexipol are not privileged because Defendants have not shown that "Lexipol was retained for purposes of this litigation."  (Dkt. 120 at 10.)  Plaintiff further argues that Defendants failed to clarify the relationship between the County and Lexipol and has not explained why the emails at Priv008 to Priv012 involving Lexipol, and without including an attorney on the email, "is entitled to protection as privileged."  (*Id.*)  Further, Plaintiff argues that the Defendants have not explained why the County's Policies are privileged.  (*Id.*)

Defendants have not asserted the Policies are privileged or work product, and in fact have produced the Policies.  (*Id.*)  The question here is whether the emails sent requesting the Policies from Lexipol as "requested by legal counsel on Evans' claim" are protected from disclosure as privileged or work-product materials.

The Court first addresses work-product protection.  Plaintiff argues Priv008 to Priv012 are not work product because they were created in the ordinary course of

business.  (Dkt. 120 at 10-11.)  Rule 26(b)(3)(A) states that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  As stated above, "whether a document is protected as work-product depends on the motivation behind its preparation, rather than on the person who prepared it."  *In re Tier 2 Jeg Telecomms. Cases*, 2012 WL 13033192, at *2.  Here, regardless of whether the Policies were created in the ordinary course of business, based on Attorney Hruby's statement that the County Sherriff's Office contracted with Lexipol in 2018 "to assist with drafting its policies and provide training materials, and Lexipol maintains records of past County Sherriff's [sic] Office" (Dkt. 139 ¶ 7) and the statements in the Amended Privilege Log that the Policies were "requested by legal counsel on Evans' claim" (Dkt. 121-10 at 5-6), the Court concludes that the emails conveying and responding to legal counsel's request are protected work product.

Plaintiff, however, contends that Defendants "may have waived the privilege" as to Priv016 to Priv018 because they produced the Policies.  (Dkt. 120 at 12.)  For the reasons stated with respect to Priv003 to Priv007 and Priv013 to Priv015 (*see supra* at Section III.B.2.d), the Court finds that production of the Policies does not require production of the corresponding emails to Plaintiff or to the Court for *in camera* review.[9]

---

[9]     If the Court accepted Plaintiff's argument that production of a document attached to a privileged or work-product email required production of the email, or at least *in camera* review of the email, document collection would grind to a halt, as counsel and clients would be unable to request or provide any documents by email.

For all these reasons, the Court denies Plaintiff's Sanctions Motion as to the emails at Priv001 to Priv018.

### 3.  Defendants Are Entitled to Sanctions

Plaintiff seeks attorneys' fees and costs pursuant to Rule 37(a)(5)(A) incurred in bringing his Sanctions' Motion (Dkt. 120 at 13-14) and Defendants seek attorneys' fees incurred in opposing Plaintiff's Sanctions Motion (Dkt 138 at 35.)

As to Plaintiff's request for attorneys' fees and costs, Rule 37 requires the parties to confer or attempt to confer "with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  Based on the record, Plaintiff last conferred with Defendants on February 23, 2022.  (*See* Dkt. 122.)  Defendants however provided Plaintiff with an Amended Privilege Log on March 1, 2022, but Plaintiff filed his Sanctions Motion on March 17, 2022 without further meeting and conferring, including, for example, without raising Plaintiff's concerns about why the emails at Priv019 and Priv020 were "blank."  (*See* Dkt. 120; Dkt. 138 at 30-31.)  Moreover, Plaintiff filed his Sanctions Motion on March 17, 2022 asking the Court to order Defendants to add the eight individuals on the Privilege Logs to their Rule 26 disclosures, but Defendants had already done so on February 24, 2022.  (Dkt. 120 at 1-4; Dkt. 136 at 1; Dkt. 139-4, Ex. 13 at 22-23.)  Accordingly, the Court finds Plaintiff failed to sufficiently confer with Defendants prior to filing the instant Sanctions Motion, and therefore denies Plaintiff's request for attorneys' fees on this basis.  *See Palm v. Rock Bottom Rests., Inc.*, Civ. No. 11-cv-1749 (JRT/TNL), 2012 WL 13027970, at *2 (D. Minn. Sept. 27, 2012) (finding plaintiffs failed to sufficiently confer with the defendant

prior to filing their motion to compel and denying the plaintiffs' request for fees); *see also Laughlin v. Stuart*, Case No. 19-cv-2547 (ECT/TNL), 2021 WL 1589546, at *5-6 (D. Minn. April 22, 2021).  The Court also finds that awarding attorneys' fees and costs to Plaintiff would be unjust in view of the narrow scope of relief obtained by Plaintiff as a result of the Motion (*in camera* review of two documents) and because much of Plaintiff's arguments were (at best) speculative, including asserting that Defendants did not produce the "actual email" for Priv019 and Priv020 even though the emails were in fact produced and attached to Plaintiff's counsel's declaration and failing to recognize that Defendants had supplemented their Rule 26 disclosures as requested three weeks before Plaintiff filed his Sanctions Motion.  (Dkts. 120 at 1-4, 13; Dkt. 121-10 at 8, 10; Dkt. 136 at 1; Dkt. 139-4, Ex. 13 at 22-23.)

Defendants seek an award of "attorneys' fees to Defendants for incurring expenses associated with responding to this frivolous motion, which was filed without adequately meeting and conferring after Defendants supplemented discovery to address the concerns raised by Plaintiff."  (Dkt. 138 at 35.)  Rule 37(a)(5)(B) permits the award of attorneys' fees to the opponent of a motion to compel if the discovery motion is denied, in view of the fact that Plaintiff succeeded in part on his Sanctions Motion.  Here, Plaintiff failed to meet and confer after Defendants' supplementation, and his Sanctions Motion seeks relief that was moot when requested (as to the Rule 26 disclosures) or for which there is no basis (taking the position that emails had not been produced when they plainly had). Plaintiff has not argued that his "motion was substantially justified or other circumstances make an award of expenses unjust."  *See* Fed. R. Civ. P. 37(a)(5)(B).  Defendants shall

serve a declaration of their legal counsel setting forth the amount of reasonable attorneys'

fees and costs they seek in connection with their opposition to Plaintiff's Sanctions

Motion, appropriately discounted insofar as the Court ordered *in camera* review of

Priv001 and Priv002, within fourteen (14) days of the date of this Order.  If Plaintiff does

not agree to the amount of the attorneys' fees and costs, he may submit his dispute to the

Court within seven (7) days after receiving the amount, and Defendants may file a

response to Plaintiff's filing within seven (7) days later.

## C.    Joint Sealing Motions

The Court turns to the Joint Sealing Motions.  The parties agree that Docket

Entries 109, 112, 130-3, 147-1, 147-3, 147-4, 147-5, 147-13, 147-14, and 159 should be

unsealed.  (Dkt. 118 at 6-7; Dkt. 170 at 5-6, 8-9, 12-13; Dkt. 175 at 4.)  As such, these

documents will be unsealed in accordance with the Local Rules.

The parties agree or otherwise do not object to the continued sealing of Docket

Entries 19, 22, 24, 24-1, 24-2, 24-3, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53,

57, 68, 87, 89, 92, 94, 96, 98, 100, 102, 103, 108, 124, 127, 130, 130-1, 130-2, 130-4,

130-5, 140, 141, 142, 144, 147, 147-2, 153, 155, and 160 on the basis that these

documents have been designated as "Confidential" under the operative protective order,

based on personal health information and personally identifiable information implicating

the parties' confidentially, and/or Minn. Stat. §§ 13.384 and 144.291.  (Dkt. 70 at 3-8;

Dkt. 118 at 3-7; Dkt. 170 at 3-4, 7-8, 13; Dkt. 171 at 3-5, 7; Dkt. 175 at 3-4.)[10]

The parties disagree as to the continued sealing of remaining Docket Entries at

issue: 110, 111, 147-6, 147-7, 147-8, 147-9, 147-10, 147-11, 147-12, and 147-15.  (Dkt.

118 at 6-7; Dkt. 170 at 9-13.)  With respect to these entries, it is Plaintiff's position that

statements of no-redaction have been filed as to these documents.  (*See id.*; *see also* Dkts.

116, 149.)  Defendants' position is that: "This exhibit [Dkt. 110] is a duplicate of ECF

No. 100-101," that Docket Entry 110 contains both confidential and public information,

and that a redacted version "should be filed to permit public access to all public portions

of the exhibit."  (Dkt. 118 at 6.)  Defendants further assert that Docket Entries 111 and

147-9 do not contain any unredacted confidential information.  (Dkt. 118 at 6; Dkt. 170 at

10-11.)  Defendants maintain that the remainder of the documents, Docket Entries 147-6,

147-7, 147-8, 147-10, 147-11, 147-12, and 147-15, contain both confidential and public

information and redacted copies should be filed.  (Dkt. 170 at 9-13.)

The Court has reviewed the materials.  Docket Entry 110 is a duplicate of the

sealed, unredacted deposition excerpts at Docket Entry 100, which were filed in a

redacted form as Docket Entry 101.  Docket Entry 111 has been redacted and does not

contain other sensitive information that would require further redaction.  Docket Entry

147-9 does not contain any confidential information.  Accordingly, Docket Entries 111

---

[10]   The joint motion at Docket Entry 171 is an amended version of the joint motion at
Docket Entry 118, except that it adds a request with respect to Docket Entry 153.
(*Compare* Dkt. 118, *with* Dkt. 171.)

and 147-9 should be unsealed.  The Court will not require the parties to file a redacted

form of Docket Entry 110, as it is duplicative of Docket Entry 100, which was previously

filed in a redacted form at Docket Entry 101.

As to the remaining documents, Docket Entries 147-6, 147-7, 147-8, 147-10, 147-

11, 147-12, and 147-15, American courts "recognize a general right to inspect and copy

public records and documents, including judicial records and documents."  *Nixon v.

Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted); *see also Lugosch

v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) ("The common law

right of public access to judicial documents is firmly rooted in our nation's history.");

*Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("Once a matter is

brought before a court for resolution, it is no longer solely the parties' case, but is also the

public's case.").  As the Eighth Circuit has held:

> There is a common-law right of access to judicial records.  . . .  This right of
> access bolsters public confidence in the judicial system by allowing citizens
> to evaluate the reasonableness and fairness of judicial proceedings, and "to
> keep a watchful eye on the workings of public agencies."  It also provides a
> measure of accountability to the public at large, which pays for the courts.

*IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citations omitted).

"'This right of access is not absolute, but requires a weighing of competing

interests.'"  *Feinwachs v. Minn. Hosp. Ass'n*, No. 11-cv-8 (JRT/SER), 2018 WL 882808,

at *3 (D. Minn. Feb. 13, 2018) (quoting *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*,

898 F.2d 1371, 1376 (8th Cir. 1990)).  The Court finds that the public has the right to

access these documents, however, due to the confidential nature of the documents which

contain personal health information and personally identifiable information, it concludes

that these documents should remain sealed and redacted versions of Docket Entries 147-6, 147-7, 147-8, 147-10, 147-11, 147-12, and 147-15 should be publicly filed.

### IV.   ORDER

For the reasons stated above, and based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Defendants' Motion for Order to Show Cause, Motion to Compel, and to Seek Sanctions (Dkt. 85) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.   The Motion is **DENIED** as to Defendants' request for attorneys' fees and costs incurred in securing the Court's December 2, 2021 Order;

   b.   The Motion is **GRANTED** as to Defendants' request for attorneys' fees and costs incurred in enforcing the Court's December 2, 2021 Order;

   c.   The Motion is **GRANTED** as to Defendants' request for attorneys' fees and costs incurred in bringing the Motion; and

   d.   The Court reserves its decision as to Plaintiff's Rule 26 disclosures and Defendants' request for Plaintiff to show cause why he should not be held in civil contempt until the June 2, 2022 hearing on Defendants' Motion for Rule 37 Sanctions, at which the parties may request or the Court may order additional briefing.

2.      Defendants shall serve on Plaintiff a declaration of their legal counsel setting forth the amount of reasonable attorneys' fees and costs they seek in connection with their attempts to enforce the December 2 Order and bringing Defendants' Motion for Order to Show Cause, Motion to Compel, and to Seek Sanctions (Dkt. 85) within fourteen (14) days of the date of this Order.  If Plaintiff does not agree to the amount of the attorneys' fees and costs, he may submit his dispute to the Court by filing a response within seven (7) days after receiving the amount, and Defendants may file a reply to Plaintiff's filing within seven (7) days later.

3.      Plaintiff's Motion to Compel and to Seek Sanctions (Dkt. 136) is **GRANTED IN PART** and **DENIED IN PART** as follows:

      a.    The Motion is **GRANTED** insofar as the Court will conduct an *in camera* review of Priv001 and Priv002; and

      b.    The Motion is otherwise **DENIED**, including as to Plaintiff's request for attorneys' fees and costs incurred in connection with the Motion.

4.      Defendants must email copies of Priv001 and Priv002 to the undersigned's chambers for *in camera* review on or before **May 23, 2022**.

5.      Defendants' request for attorneys' fees and costs in opposing Plaintiff's Motion to Compel and to Seek Sanctions is **GRANTED** insofar as Defendants shall serve a declaration of their legal counsel setting forth the amount of reasonable attorneys' fees and costs they seek in connection with

their opposition to Plaintiff's Sanctions Motion, appropriately discounted insofar as the Court ordered *in camera* review of Priv001 and Priv002, within fourteen (14) days of the date of this Order. If Plaintiff does not agree to the amount of the attorneys' fees and costs, he may submit his dispute to the Court by filing a response within seven (7) days after receiving the amount, and Defendants may file a reply to Plaintiff's filing within seven (7) days later.

6. The parties' Joint Motions for Continued Sealing (Dkts. 70, 118, 170, 171, and 175) are **GRANTED** as follows:

    a. Docket Entries 109, 112, 130-3, 147-1, 147-3, 147-4, 147-5, 147-13, 147-14, and 159 will be **UNSEALED** in accordance with the Local Rules.

    b. Based on the parties' agreement and the Court's review, Docket Entries 19, 22, 24, 24-1, 24-2, 24-3, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 57, 68, 87, 89, 92, 94, 96, 98, 100, 102, 103, 108, 124, 127, 130, 130-1, 130-2, 130-4, 130-5, 140, 141, 142, 144, 147, 147-2, 153, 155, and 160 will remain **SEALED**.

    c. As to the contested documents, Docket Entries 111 and 147-9 will be **UNSEALED**. Docket Entries 110, 147-6, 147-7, 147-8, 147-10, 147-11, 147-12, and 147-15 will remain **SEALED** for the reasons stated forth above. However, Plaintiff will be required to publicly

file a redacted version of the Docket Entries at 147-6, 147-7, 147-8, 147-10, 147-11, 147-12, and 147-15 on or before **May 23, 2022**.

DATED: May 16, 2022                    *s/Elizabeth Cowan Wright*
                                       ELIZABETH COWAN WRIGHT
                                       United States Magistrate Judge